Alejandro S. McALLISTER, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 93–CV–892.

District of Columbia Court of Appeals.

Argued Nov. 22, 1994.

Decided Jan. 26, 1995.

Patrick T. Hand, with whom M. Azhar Khan was on the brief, for appellant.

James C. McKay, Jr., Asst. Corp. Counsel, with whom Vanessa Ruiz, Acting Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, were on the brief, for appellee.

Before STEADMAN and KING, Associate Judges, and GALLAGHER, Senior Judge.

KING, Associate Judge:

This appeal challenges the granting of a summary judgment motion against Alejandro S. McAllister, who was seeking damages stemming from a mistaken entry on a Judgment and Commitment Order ("Order") made by the courtroom clerk and signed by the sentencing judge, that resulted in his being imprisoned, after a criminal conviction, for a period of time far in excess of the maximum term permitted for that offense. In this action against the District of Columbia ("District"), McAllister alleged theories of negligence and false imprisonment on the part of the sentencing judge, the courtroom clerk, the Legal Assistance Branch of the Superior Court, and the Department of Corrections, and sought judgment against the District on the basis of respondeat superior. McAllister also sought judgment against the District for unjust imprisonment under the provisions of D.C.Code § 1–1221 *et seq.* We hold that the judge and the courtroom clerk

are protected by judicial immunity, that McAllister failed to show that the District personnel had a duty to discover and correct the judge's sentencing error, and that § 1–1221 does not apply under the circumstances of this case. Therefore, we affirm.

## I.

McAllister was indicted on August 17, 1988, for unauthorized use of a motor vehicle, destruction of property, first-degree theft, and receiving stolen property. He pleaded guilty to attempted unauthorized use of a motor vehicle ("UUV") which, pursuant to D.C.Code § 22–103, carried a maximum penalty of one year. However, on the Order which the judge later signed, the courtroom clerk recorded a sentence of "time not to exceed five years." McAllister had served two years and 329 days before the mistake was brought to the attention of the sentencing judge who corrected it immediately, thus permitting McAllister's release.

## II.

### Scope of Review

■ The trial court may enter summary judgment if, construing the evidence in the light most favorable to the nonmoving party, it determines (1) there is no genuine issue of material fact, and (2) the moving party is entitled to judgment as a matter of law. *Nader v. de Toledano,* 408 A.2d 31, 41 (D.C. 1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980); Super.Ct.Civ.R. 56(c) (1993). On appeal, we conduct our own review of the record to determine whether the trial court properly applied those standards. *West End Tenants Ass'n v. George Washington Univ.,* 640 A.2d 718, 725 (D.C. 1994).

## III.

### Discussion

*Judicial Immunity* [1]

■ It is well settled that judges are immune from liability "for acts committed with-

1. The purpose for conferring judicial immunity is     to maintain judicial integrity by protecting the

in their judicial jurisdiction." *Cunningham v. District of Columbia*, 584 A.2d 573, 576 (D.C.1990) (citation omitted) (act is "judicial" if a judge typically performs it and the affected parties dealt with the judge in his or her judicial capacity). The acts of which McAllister complains are integral parts of the judicial process, and the sentencing judge unquestionably acted within proper judicial capacity and jurisdiction in sentencing McAllister. Therefore the sentencing judge is immune from liability. *See Cunningham supra*, 584 A.2d at 576 ("immunity applies however erroneous the act . . . and however injurious . . . its consequences. . . .").

■ In the District of Columbia the immunity conferred on judges has been extended to a variety of public officials and employees;[2] however, we have never considered whether a courtroom clerk should be clothed with this protection.[3] The United States Court of Appeals for the District of Columbia Circuit has, however, extended judicial immunity to courtroom clerks, holding:

[I]f immunity were not extended to clerks, courts would face the danger that disappointed litigants, blocked by the doctrine

of absolute immunity from suing the judge directly would vent their wrath on clerks, court reporters, and other judicial adjuncts.

*Sindram v. Suda*, 300 U.S.App.D.C. 110, 112, 986 F.2d 1459, 1461 (1993) (citations omitted). We agree, and accordingly, we hold that because of the doctrine's underlying purpose, court clerks, like judges, should be immune from damage suits for performing tasks that are integrally related to the judicial process. *See Forrester, supra*, 484 U.S. at 227, 108 S.Ct. at 544 ("immunity is justified . . . by the functions it protects and serves, not by the person to whom it attaches.") (emphasis omitted); *Sindram, supra*, 300 U.S.App.D.C. at 112, 986 F.2d at 1461 (judicial immunity extends to auxiliary court personnel performing tasks that are integral to the judicial process).[4]

■ Since the judge and the courtroom clerk are not liable, neither is the District.[5] The immunity enjoyed by the judge and courtroom clerk is imputed to the District. *See Powell v. District of Columbia*, 602 A.2d 1123, 1127 (D.C.1992) (municipality entitled

---

independence of judicial decision-making, ensuring that important decisions are made without fear of personal liability or harassment by vexatious actions prosecuted by dissatisfied litigants. *See Forrester v. White*, 484 U.S. 219, 225, 108 S.Ct. 538, 543, 98 L.Ed.2d 555 (1988); *Capitol Terrace, Inc. v. Shannon & Luchs, Inc.*, 564 A.2d 49, 51 (D.C.1989).

2. Judicial immunity is bestowed upon public officials when the following conditions are met: "First, their activities must be integrally related to the judicial process; second, they must exercise discretion comparable to that exercised by a judge [or] their primary function is to assist a judge or a court in the administration of justice." *Cunningham, supra*, 584 A.2d at 576–77. *See, e.g., Capitol Terrace, supra*, 564 A.2d at 51 (immunity extended to court-appointed receiver); *Stanton v. Chase*, 497 A.2d 1066, 1066 (D.C. 1985) (same: to Public Defender Service employee recommending attorneys to the court for appointment in criminal cases); *Turner v. Barry*, 272 U.S.App.D.C. 377, 378, 856 F.2d 1539, 1540 (1988) (same: probation officer); *Simons v. Bellinger*, 207 U.S.App.D.C. 24, 30–32, 643 F.2d 774, 780–82 (1980) (same: court-appointed committee on unauthorized practice of law); *Schinner v. Strathmann*, 711 F.Supp. 1143 (D.D.C. 1989) (same: psychiatrist who interviewed criminal defendant to assist the judge in determining defendant's competency to stand trial); *see also*

*Cunningham, supra*, 584 A.2d at 577 n. 8 for other jurisdictions extending judicial immunity to certain governmental personnel.

3. *But see Akins v. District of Columbia*, 526 A.2d 933 (D.C.1987)

4. McAllister further argues that this court should make an exception to the doctrine of judicial immunity in his case because otherwise, he would be without a remedy. The trial court observed, and we agree, that McAllister had a remedy under D.C.Code § 23–110. Under that provision, a criminal defendant has a right "at any time" to move the trial court "to vacate, set aside, or correct" a sentence if "the sentence was in excess of the maximum authorized by law." D.C.Code § 23–110(a), (b) (1989). *See also* Super.Ct.Cr.R. 35(a): "The court may correct an illegal sentence at any time. . . ." McAllister's failure to avail himself of this remedy in a timely fashion provides no basis for waiving judicial immunity.

5. Although the point was not raised by either party, we assume, without deciding, that, absent some bar such as judicial immunity, the principle of respondeat superior serves to impose liability upon the District for torts of judicial branch personnel (including judges) in the same manner that torts committed by the executive branch employees impose liability.

to employee's defense under the respondeat superior theory); *Calhoun v. City of Providence,* 120 R.I. 619, 390 A.2d 350, 356 (1978) ("If a judge must weigh each decision against the possibility that he will precipitate tort litigation against the state ... judicial freedom and independence are .... affected"); *cf. Cunningham, supra,* 584 A.2d at 578.

### Negligence

■ We now turn to the claim relating to the alleged negligence of the Legal Assistance Bureau and the Department of Corrections.[6] In order to prevail in negligence, McAllister must make out a prima facie claim showing that the District, through its agents, had a duty to discover and correct errors in orders. *See Powell ex rel. Ricks v. District of Columbia,* 634 A.2d 403, 406 (D.C.1993); *Beard v. Goodyear Tire & Rubber Co.,* 587 A.2d 195, 199–200 (D.C.1991); *Toy v. District of Columbia,* 549 A.2d 1, 6 (D.C.1988). This he has failed to do; thus we hold that the trial court correctly granted the motion for summary judgment. *See Nader, supra,* 408 A.2d at 41.

McAllister acknowledges that he could identify no District of Columbia Municipal Regulations, statute, or case law, which impose the duty, on the named District agents, to discover and correct errors in sentencing orders.[7] He argues, however, that if he were able to ascertain the identity of specific District personnel, through discovery, this would enable him to establish the duty. The District responds, and we agree, that the identity of the District's agents responsible for processing judgment and commitment orders is not a disputed material fact for purposes of summary judgment. The District has never contended that such employees do not exist; rather, it maintains that their identity is not material since there has been no showing by McAllister that those, or any, District employees had a ministerial duty to correct errors in those Orders. In short, having failed to establish such a duty on the part of any District employee, summary judgment was proper. *West End Tenants Ass'n, supra,* 640 A.2d at 725 (disputed factual issue must be material to avoid summary judgment); *Fulwood v. Porter,* 639 A.2d 594, 600 (D.C.1994); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (mere allegation of factual dispute will not frustrate motion for summary judgment, and only disputed facts that would affect the outcome of the suit will preclude the entry of summary judgment).

Moreover, McAllister's assertion that he was unable to effectively oppose the summary judgment motion because he was denied discovery lacks merit. Superior Court Rule of Civil Procedure 56(f) ("Rule 56(f)") affords protection against the premature or improvident grant of summary judgment, and a nonmovant can invoke this protection by filing an affidavit stating how discovery would enable him or her to effectively oppose the summary judgment motion.[8] *See Guth-*

---

6. In its reply to the opposition to its motion for summary judgment the District contended, for the first time, that judicial immunity extends to the employees of the Department of Corrections and the Legal Assistance Branch. The trial court, however, neither mentioned that ground nor relied upon it in its order granting the motion for summary judgment. In this court, the District principally argued, as discussed in the text, that there has been no showing that those employees had a duty to discover and correct the error made by the sentencing judge and the courtroom clerk. Secondarily, the District also contends that "[j]udicial immunity also protects other government personnel executing a judgment and commitment order issued by a judge, including the employees of the Department of Corrections." In light of our affirmance of the trial court on the "no duty" ground, we do not consider whether judicial immunity extends to personnel in either the Department of Corrections or the Legal Assistance Branch.

7. The trial court granted summary judgment on this basis stating ... "[McAllister], however fails to cite any authority for the proposition that these agencies and their officials had a duty to ... [McAllister] to discover and rectify any error in the sentencing of [McAllister]. Absent such duty, ... [McAllister] has failed to state a prima facie case for negligence."

8. Rule 56(f) provides:

   *When affidavits are unavailable.* Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the Court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just. Super.Ct.Civ.R. 56(f) (1993).

*rie v. Sawyer*, 970 F.2d 733, 738 (10th Cir. 1992) (summary judgment not improvidently granted when nonmovant fails to file a Rule 56(f) affidavit). McAllister did not file a Rule 56(f) affidavit explaining how discovery would provide "facts essential to justify ... [his] opposition;" therefore, the trial court properly granted summary judgment. Super.Ct.Civ.R. 56(f), *supra*, note 8; *see also Mid–South Grizzlies v. National Football League*, 720 F.2d 772, 780 n. 4 (3d Cir.1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2657, 81 L.Ed.2d 364 (1984) ("[m]ost courts which have considered the issue agree that filing an affidavit is necessary for the preservation of a Rule 56(f) contention that summary judgment should be delayed pending discovery").[9]

McAllister's reliance on *Woodward v. District of Columbia*, 387 A.2d 726 (D.C.1978) is misplaced. There, the plaintiff sued the District on the theory of respondeat superior based on a false arrest by two experienced police officers. We reversed the trial court's order directing a verdict in the District's favor because (1) the law prohibited arrest based on a facially invalid warrant; and (2) as a matter of law, the arresting officers were charged with notice of its invalidity. *Id.* Woodward, however, specifically identified the District's agents who had a clearly defined statutory duty to exercise care in executing a warrant. Here, the District's agents are not charged with knowledge of the error because, as McAllister acknowledges, the Order was facially valid. Thus, *Woodward* has no applicability to the facts presented here.

**Unjust Imprisonment**

Finally, McAllister argues that he was entitled to relief under the District's Unjust Imprisonment Act of 1980,[10] and summary judgment on this count was improper.[11] The District's Unjust Imprisonment Act is limited in scope and is applicable only to persons who are convicted and subsequently imprisoned for offenses which they did not commit, and who can prove by clear and convincing evidence that they did not commit the offense for which they were incarcerated, or any other similarly imprisonable offense. D.C.Code § 1–1222 (1992); REPORT OF THE COMMITTEE ON THE JUDICIARY ON BILL 3–251 at 6 (1980) (comments of Councilmember Clarke). Based on its limited applicability,

---

9. Pursuant to *Varela v. Hi–Lo Powered Stirrups, Inc.*, 424 A.2d 61, 68 (D.C.1980), we may look to the federal courts' interpretation of identical rules of civil procedure to lend support and guidance in our interpretation of the local rule.

10. The statute provides in relevant part:

D.C.Code § 1–1221 *Right to present claim*
Any person unjustly *convicted* of and subsequently imprisoned for a criminal offense contained in the District of Columbia Code may present a claim for damages against the District of Columbia.
D.C.Code § 1–1222 *Proof Required.*
Any person bringing suit under § 1–1221 must allege and prove:
(1) That his conviction has been reversed or set aside on the ground that he is not guilty of the offense of which he was convicted, or on new trial or rehearing was found not guilty of such offense, as appears from the record or certificate of the court setting aside or reversing such conviction, or that he has been pardoned upon the stated ground of innocence and unjust conviction; and
(2) That, based upon clear and convincing evidence, he did not commit any of the acts charged or his acts or omissions in connection with such charge constituted no offense against the United States or the District of Columbia the maximum penalty for which

would equal or exceed the imprisonment served and he did not, by his misconduct, cause or bring about his own prosecution.
D.C.Code § 1225 *Application of subchapter— Entry of guilty plea.*
This subchapter shall not apply to any person whose conviction resulted from his entering a plea of guilty unless that plea was pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970).
D.C.Code §§ 1–1221, –1222, –1225 (1992) (emphasis added).

11. Although the District did not specifically ask for summary judgment on this count, the trial court, without providing its reasons, entered summary judgment in favor of the District. The trial court's failure to state its reasons is not fatal because the propriety of summary judgment in this instance is a purely legal question reviewable de novo by this court, meaning, no deference would have been given to the trial court's resolution of a question of law. *United States v. Felder*, 548 A.2d 57, 61 (D.C.1988). Therefore, had the trial court provided the basis for its ruling on this issue, we would still, as we do now, make an independent judgment based upon our own examination of the record. *Id.* Appellant does not contend that the issue is not properly before this court; instead, appellant specifically requests that we reverse the trial court's grant of summary judgment.

we agree with the District that McAllister has no cognizable rights under this statute. First, McAllister's sentence was *corrected*, his conviction was not "reversed or set aside" [and he was not] "pardoned upon the stated ground of innocence and unjust conviction." D.C.Code § 1–1222(1), *supra* note 10. Second, McAllister entered a guilty plea to attempted UUV—an admission of guilt [12]—putting him outside the protection of the Act because (1) attempted UUV is an offense against the District; and (2) the Act specifically denies relief to persons who entered guilty pleas. D.C.Code § 1–1225, *supra* note 10. For all these reasons, summary judgment on the count was proper.[13]

*Affirmed.*

---

**12.** There is no record evidence that this was an *Alford* plea.

**13.** McAllister urges us to reverse the trial court because otherwise he would be "penalized for being the victim of an unusual error for which there is no legal precedent." Even though he suffered an injury, the law, as it stands, does not afford McAllister the remedy he seeks. Relief of the type sought by McAllister is more suitably addressed by the legislature. *See generally Riggs Nat'l Bank of Washington, D.C. v. District of Columbia,* 581 A.2d 1229, 1258 (D.C.1990).